AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

District of Delaware

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**In the matter of the search of three (3) cell phones, in ATF custody, described more particularly in Attachment A** | )<br>)<br>)<br>)<br>)<br>)    Case No.  20-278M |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ Delaware _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Possession of a Firearm by a Felon |
| 18 U.S.C. § 924(c)(1)(A) | Possession of a Firearm in Furtherance of a Drug Trafficking Crime |
| 21 U.S.C. § 841(a)(1) | Possession With Intent to Distribute a Controlled Substance |

The application is based on these facts:

**see attached affidavit**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Thomas E. Hoffman, ATF
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: ___10/27/2020___

_____
*Judge's signature*

City and state:  Wilmington, Delaware

Honorable Christopher J. Burke, Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

- White, APPLE IPHONE, unknown model, SIM card # 8901240132717939369 41.50 bearing unknown telephone number (TARGET DEVICE #1); and

- Black, APPLE IPHONE, unknown model, SIM card # 89148000005581235389 bearing unknown telephone number (TARGET DEVICE #2); and

- Black, LG PHONE, unknown model, SIM card # 8901260026179497806 bearing unknown telephone number (TARGET DEVICE #3)

The three cell phones, collectively the (TARGET DEVICES), are currently located at the ATF Wilmington Field Office, 1007 N. Orange Street, Suite 201, Wilmington, Delaware.

## ATTACHMENT B

1.      All records on the TARGET DEVICES, described in Attachment A, that relate to violations of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person; 18 U.S.C. § 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and 21 U.S.C. § 841(a)(1) and 841(b)(1(B), Possession with Intent to Distribute a Controlled Substance, which records are for the approximate one-year period of October 1, 2019, through September 17, 2020, and involve Javon JACKSON, regardless of the application used to create, store, or share same, including:

    a.   Text messages or instant messages, sent or received;

    b.   Voice mail messages, sent or received;

    c.   Images, pictures, photographs, videos, or other visual depictions, sent or received;

    d.   Electronic calendars, notes, task lists, or other information relating to a person's activities;

    e.   Names, telephone number, and addresses, including but not limited to the Address Book;

    f.   Bank and credit card account information, and other financial records;

    g.   GPS and location data; and

    h.   Evidence of user attribution, showing who used or owned the TARGET DEVICES at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

## IN THE UNITED STATES DISTRICT COURT
## FOR DISTRICT OF DELAWARE

**IN THE MATTER OF THE SEARCH OF**:

Three (3) cell phones, in ATF custody, described more particularly in Attachment A.

Case No.  20-278M

## AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

Your affiant, Thomas E. Hoffman, Special Agent ("SA") of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property – three electronic devices (cell phones) described with specificity herein and in Attachment A, incorporated herein – which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and Federal Rule of Criminal Procedure 41, and am empowered by law to conduct investigations of, and to make arrests for, offenses in Titles 18 and 21 of the United States Code.  In 2006, I graduated from the Federal Law Enforcement Training Center (FLETC) and the ATF Special Agent Basic Training Academy.  I received specialized training concerning violations of the Gun Control Act within Title 18 and the National Firearms Act within Title 26, of the United States Code pursuant to firearms violations. I am a duly sworn agent who is authorized to carry firearms, execute warrants, and make arrests for offenses against the United

States and to perform such other duties as authorized by law.  Since October 2008, I have been assigned to the ATF Baltimore Field Division, Wilmington, Delaware Resident Office.  Prior to this, I was assigned to the ATF Baltimore Field Division, HIDTA Group in Baltimore, Maryland.

3.      Prior to my position with the ATF, I was employed by the Philadelphia Camden HIDTA as an Intelligence Analyst, in Philadelphia, Pennsylvania for approximately 7 years.

4.      During the course of your affiant's law enforcement career, your affiant has received law enforcement training on the investigation of firearm and drug offenses.  Your affiant has participated in hundreds of investigations of firearm and drug offenses and participated in the seizure of over a thousand firearms.  You affiant has also has had multiple conversations with police officers and Federal agents about the facts and circumstances of firearm and drug offenses. Your affiant has participated in all aspects of firearm and drug investigations and personally served as the affiant on multiple federal court-ordered intercepts of wire communications.

5.      During my time in law enforcement, and through training and experience, I have become familiar with the manner and methods by which narcotics traffickers conduct their illegal business and common language and terms that are used to disguise conversations about their narcotics activities.   Your affiant also recognizes that narcotics traffickers utilize cellular telephones and/or portable cellular telephones to conduct drug activity, and that they frequently change their cellular devices and/or cellular telephone numbers to avoid law enforcement detection.

6.      The investigation concerns alleged violations of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person; 18 U.S.C. § 924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and 21 U.S.C. § 841(a)(1) and 841(b)(1)(B), Possession

2

with Intent to Distribute a Controlled Substance (hereinafter referred to as the "SPECIFIED FEDERAL OFFENSES").

7.      This affidavit is based on my personal knowledge and observations as well as information provided to me by other law enforcement officers.  This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about the matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

8.      This affidavit is in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 for the following listed cellular telephone equipment seized by officers of the Wilmington Police Department ("WPD") on September 17, 2020:

> a.  A white APPLE IPHONE, CONTAINING SIM CARD # 8901240132717939369 41.50 (hereinafter "TARGET DEVICE #1");
>
> b.  A black APPLE IPHONE, CONTAINING SIM CARD # 89148000005581235389 (hereinafter "TARGET DEVICE #2"); and
>
> c.  A black LG PHONE, CONTAINING SIM CARD # 8901260026179497806 (hereinafter "TARGET DEVICE #3")

9.      Together, these devices are referred to as the "TARGET DEVICES" and are described in Attachment A.  The TARGET DEVICES are currently located at the ATF Wilmington Field Office, located at 1007 North Orange Street, Suite 201, Wilmington, Delaware 19801.  They came into your affiant's custody after WPD officers seized them.

10.     In my training and experience, I know that the TARGET DEVICES have been stored in a manner in which their contents are, to the extent material to this investigation, in

3

substantially the same state as they were when the TARGET DEVICES first came into possession of ATF.

11.     The requested warrant would authorize the forensic examination of the TARGET DEVICES for the purpose of identifying electronically stored data particularly described in Attachment B.

12.     Your affiant submits, based on the information set forth in this Affidavit, that there is probable cause to believe that the TARGET DEVICES contain evidence of violations of one or more of the SPECIFIED FEDERAL OFFENSES.

## PROBABLE CAUSE

13.     On September 17, 2020, WPD officers assigned to the Street Crimes Unit were operating an unmarked WPD vehicle in the area of the 699 block of South Van Buren Street. They were wearing exterior vest carriers, which are clearly marked on the front and back in large white bold lettering "POLICE STREET CRIMES UNIT."

14.     There, the officers observed Javon JACKSON ("JACKSON") alone in a parked Nissan Altima, sitting in the driver seat  The officers recognized JACKSON and were aware that he had an active Violation of Probation capias issued out of the Superior Court for the State of Delaware.

15.     The WPD Unit stopped its vehicle, at which time JACKSON exited the Nissan Altima and fled on foot.  Two WPD officers gave chase with clear verbal commands of "Wilmington Police Stop," which commands were refused.   Other officers remained with and secured the Nissan Altima.

16.     During the pursuit, JACKSON fled through the front door of 607 South Van Buren Street and the officers chased after him inside.   The pursuing WPD officers apprehended JACKSON, as he unsuccessfully attempted to open the back door.

17.     When JACKSON was arrested, among the items on his person were car keys and two IPhones (TARGET DEVICES #1 and #2).  The officers took the keys to the Nissan Altima, where they looked inside the car and observed in plain view a black handgun on the driver side floorboard.  The officers then used the keys to gain access to the Nissan Altima and rendered safe the handgun, a fully loaded Sig Sauer, 9mm, semi-automatic pistol.  (Your affiant knows this firearm was not manufactured in Delaware and necessarily moved in interstate commerce to Delaware. Further, your affiant ran JACKSON's criminal history through DELJIS, which revealed that he has multiple felony convictions which prohibited him from the possession of a firearm, including convictions in the Superior Court for the State of Delaware, on May 23, 2017, for Drug Dealing Tier 3, and on May 19, 2020, for Assault Second Degree and Carrying Concealed a Deadly Weapon.)

18.     WPD officers drove the Nissan Altima to WPD Headquarters, where a state court search warrant was obtained and executed on the car.  Located in the driver side door pocket was a LG cell phone (TARGET DEVICE #3).  Located in the rear pocket of the front passenger seat was a UPS envelope addressed to Javon Jackson, 607 S. Van Buren Street, Wilmington, DE. Located in the center console were two packages, each wrapped in white paper.  The first package, stamped "Lexus" in blue ink, contained 195 small, clear zip-lock style bags that each contained a blue in color wax bag that, in turn, contained approximately .007 grams of an off-white powdery substance.  The second package, also stamped "Lexus," was taped on all sides and contained 260 small, clear zip-lock style bags, each identical to those in the first package.

19.     Your affiant is aware through his training and experience that heroin, in usable form, is most commonly packaged in blue wax paper bags, contained in clear plastic bags. The clear plastic bags are commonly bundled with a rubber band into 13 bags, and is referred to as a "bundle." Ten bundles wrapped in paper constitute a "log." The referenced two packages are consistent with heroin. The taped package with 260 bags constitutes two "logs" of heroin. The estimated weight of a single bag of heroin is .007 grams. A total of 455 bags of heroin would be approximately 3.185 grams.

20.     The seized 455 bags have been submitted to a drug lab for analyses and your affiant is awaiting results. Here, WPD officers and your affiant conducted no filed tests due to Drug Enforcement Administration ("DEA") warnings concerning the presence of highly toxic fentanyl and/or fentanyl-laced heroin in recent drug seizures. Fentanyl can be similar to heroin in appearance and can be absorbed through different routes of exposure, including through the skin, by inhalation, ingestion or injection. The onset of adverse health effects, such as disorientation, coughing, sedation, respiratory distress or cardiac arrest is very rapid and profound, usually occurring within minutes of exposure. The dosage of fentanyl is a microgram, one millionth of a gram, similar to just a few granules of table salt. Fentanyl can be     lethal     and     is     deadly     at     very     low     doses.     See https://www.dea.gov/divisions/hq/2016/hq061016.shtml.     In light of the significant health risks to law enforcement handling substances potentially containing fentanyl, the DEA has issued a caution to law enforcement officers against field-testing these substances and advises that they be sent directly to the controlled substance testing laboratory. Historically, other controlled substances that pose similar health risks when handling, like phencyclidine (PCP)

or lysergic acid diethylamide (LSD), have not been field tested and the courts have relied upon an affiant's description of the substance to support a finding of probable cause.

21.    A WPD Latent Fingerprint examiner lifted prints off the white paper wrappers, one of which prints was compared by an expert examiner with JACKSON's known fingerprints with a positive match.

22.    Based on your affiant's training and experience, he knows that drug traffickers utilize cellular telephones to coordinate their transactions, including details regarding the quantity and type of illegal drug and the physical meet location of the transaction.  This is commonly done through text messages and telephone calls.  Persons involved in criminal acts will utilize mobile electronic devices, such as cellular phones, to further facilitate their criminal acts and/or communicate with customers and co-conspirators.  Drug traffickers also commonly utilize their cell phones to take photographs and store images of drugs, drug proceeds, guns and associates, sometimes to promote their business via the use of social media.

23.    There is probable cause to believe that JACKSON has used the three TARGET DEVICES to further narcotics trafficking.  Based upon your affiant's training and experience narcotics traffickers carry multiple phones, at least one reserved for family and personal matters and a second for drug dealing and communicating with sources of supply, customers and co-conspirators.  JACKSON's narcotics trafficking most likely was facilitated by the TARGET DEVICES and therefore the forensic extraction of the TARGET DEVICES will  likely uncover conversations and other evidence that shows JACKSON's involvement in narcotics distribution, specifically identifying JACKSON's co-conspirators, suppliers, and customers, and any locations where he may store drugs.

## TECHNICAL TERMS

24.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:   A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b.  Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also

include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c.  Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d.  GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna

can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.  PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data.  Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data.  Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the Target Device.

f.  IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet.  An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination.  Most Internet service providers control a range of IP addresses.  Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.  Internet: The Internet is a global network of computers and other electronic devices that communicate with each other.  Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

25.     Based on my training, experience, and research, and from consulting the manufacturer's advertisements and product technical specifications available online at http://Apple.com/us/, and http://LG.com/us/.  I know that each TARGET DEVICE is a smart phone and has capabilities that allow it to serve as "a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA." In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the TARGET DEVICES, as well as evidence related to crimes committed or facilitated by them.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

26.     Based on my knowledge, training, and experience, I know that electronic devices, such as smart phones, can store information for long periods of time, including information that has been viewed via the Internet.  This information can sometimes be recovered with forensics tools.

27.     *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Target Devices were used, the purpose of that use, who used them, and when.  There is

probable cause to believe that this forensic electronic evidence might be on the Target Devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. I know that when an individual uses an electronic device to facilitate drug trafficking, the individual's electronic device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain: data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

28. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the Target Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Target Devices to human inspection in order to determine whether it is evidence described by the warrant.

29. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto any premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

30.     Based on the foregoing, your affiant respectfully submits that there is probable cause to believe that there exists evidence of violations of the SPECIFIED FEDERAL OFFENSES on the TARGET DEVICES. Accordingly, your affiant respectfully requests that this Court issue a warrant to search the TARGET DEVICES, more particularly described in Attachment A, and to seize the items specified in Attachment B.

Respectfully submitted,

Thomas E. Hoffman
Senior Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and sworn to before me
on October  27  , 2020:

HONORABLE CHRISTOPHER J. BURKE
UNITED STATES MAGISTRATE JUDGE

14

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means          ☐ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
District of Delaware

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>In the matter of the search of three (3) cell phones, in<br>ATF custody, described more particularly in<br>Attachment A | )<br>)<br>)  Case No.   20-278M<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____ Delaware _____
*(identify the person or describe the property to be searched and give its location)*:

  See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

  See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before _____ November 9, 2020 _____ *(not to exceed 14 days)*
  ☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Duty U.S. Magistrate Judge _____ .
*(United States Magistrate Judge)*

  ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
    ☐ for ____ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:       October 27, 2020 at 2:00 pm          *Christopher J. Burke*
                                                                      *Judge's signature*

City and state:   Wilmington, Delaware _____          Honorable Christopher J. Burke, U.S. Magistrate Judge
                                                                      *Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is:

- White, APPLE IPHONE, unknown model, SIM card # 8901240132717939369 41.50 bearing unknown telephone number (TARGET DEVICE #1); and

- Black, APPLE IPHONE, unknown model, SIM card # 89148000005581235389 bearing unknown telephone number (TARGET DEVICE #2); and

- Black, LG PHONE, unknown model, SIM card # 8901260026179497806 bearing unknown telephone number (TARGET DEVICE #3)

The three cell phones, collectively the (TARGET DEVICES), are currently located at the ATF Wilmington Field Office, 1007 N. Orange Street, Suite 201, Wilmington, Delaware.

**ATTACHMENT B**

1.      All records on the TARGET DEVICES, described in Attachment A, that relate to

violations of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person; 18 U.S.C. §

924(c)(1)(A), Possession of a Firearm in Furtherance of a Drug Trafficking Crime; and 21 U.S.C.

§ 841(a)(1) and 841(b)(1(B), Possession with Intent to Distribute a Controlled Substance, which

records are for the approximate one-year period of October 1, 2019, through September 17, 2020,

and involve Javon JACKSON, regardless of the application used to create, store, or share same,

including:

    a.   Text messages or instant messages, sent or received;

    b.   Voice mail messages, sent or received;

    c.   Images, pictures, photographs, videos, or other visual depictions, sent or received;

    d.   Electronic calendars, notes, task lists, or other information relating to a person's
         activities;

    e.   Names, telephone number, and addresses, including but not limited to the Address
         Book;

    f.   Bank and credit card account information, and other financial records;

    g.   GPS and location data; and

    h.   Evidence of user attribution, showing who used or owned the TARGET
         DEVICES at the time the things described in this warrant were created, edited, or
         deleted, such as logs, phonebooks, saved usernames and passwords, documents,
         and browsing history.